**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ARTHUR STUTZMAN,          *

        Plaintiff,       *

    v.              *     Civil Action No. 17-TDC-3841

EVAN KRENIK, et al.,        *

        Defendants.    *

\*     \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT</u>

<u>TABLE OF CONTENTS</u>

Page

INTRODUCTION…………………………………….….….……....…….……1

STATEMENT OF FACTS…..………………………….….….….....…..….……2

PLAINTIFF'S CLAIMS……………………………………….….…............2

LEGAL STANDARDS……………………………………….….….……4

I.      Motion To Dismiss……………………………………………………4

II.     Summary Judgment…………………………………….….……...…..5

ARGUMENT……………………………………………….……...….5

I.      All of Plaintiff's Claims Alleging False Arrest Fail
      Because Allegations In Plaintiff's Complaint
      Establish Probable Cause As A Matter Of Law
      And Plaintiff was Subsequently Convicted Of
      Eluding A Police Officer (Counts 1, 2 and 5) …………...……..…..…5

Page

A.    All of Plaintiff's Unlawful Arrest Claims Are negated
      By The Existence of Probable Cause…………………..…….……..5

B.    There Was Sufficient Probable Cause To Make
      An Arrest For Eluding A Police Officer Based
      Solely On The Allegations In Plaintiff's Complaint…..……......…7

C.    The Fact That Plaintiff Was Found Guilty Of
      Eluding A Police Officer Establishes Probable
      Cause As A Matter Of Law……………………………......…..……9

II.    Plaintiff's Excessive Force Claims Fail As A Matter Of
       Law Because Defendants Used Reasonable Force To
       Make A Lawful Arrest………………………………….…….…....12

A.    Plaintiff's Constitutional Claims Alleging Excessive
      Force  Fail As A Matter Of Law (Counts 1 and 5)………………..12

B.    Plaintiff's Battery Claim Must Fail Because
      Troopers Manning and Krenik Were Justified
      In Using Force When Arresting Plaintiff (Count 3)………......…17

C.    There Are No Facts Suggesting Troopers Manning
      And    Krenik Acted With Gross Negligence (Count 4)…....….…17

III.   Troopers Manning And Krenik Are Entitled To Immunity
       On All Counts………………………………………….……..…18

A.    Troopers Manning And Krenik Are Entitled To
      Federal Qualified Immunity For The 42 U.S.C.
      § 1983 Claim (Count 1)……………………………….....….…18

      1.    Defendants Manning And Krenik Had
            At Least Arguable Probable Cause
            To Arrest Plaintiff……………...……………....…….19

      2.    There Is No Clearly Established Law
            Providing A   Reasonable Police Officer
            With Notice That Handcuffing An Arrestee
            From Behind Without A Visual Injury
            Constitutes Excessive Force…………………..….……..21

Page

B.      Troopers Manning and Krenik Are Entitled To
        Maryland Statutory Immunity For  All The
        Maryland Claims     (Counts 2 thru 5)…………..……...……….23

CONCLUSION…………………………………………………..………….25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ARTHUR STUTZMAN,                    *

              Plaintiff,              *

     v.                             *          Civil Action No. 17-TDC-3841

EVAN KRENIK, et al.,                *

              Defendants.            *

*      *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendants, Maryland State Police Troopers Evan Krenik and Marcus Manning, by their attorneys, Brian E. Frosh, Attorney General of Maryland, and Phillip M. Pickus, Assistant Attorney General file this Memorandum of Law in support of their Motion to Dismiss or for Summary Judgment and state:

## INTRODUCTION

In this 42 U.S.C. § 1983 case containing both constitutional and common law claims, Plaintiff complains that he was unlawfully arrested, handcuffed, and placed in a police vehicle after he himself initiated contact with two Maryland State Police ("MSP") Troopers. The facts provided in Plaintiff's own Complaint, however, establish that the Troopers had probable cause to arrest Plaintiff, a conclusion further confirmed by the fact that Plaintiff was subsequently found guilty of one of the charged offenses in a Maryland Court. Moreover, the excessive force claims amount to nothing more than the ordinary force used by

police to arrest a criminal suspect. These facts establish that Plaintiff's claims are meritless and even if any claims are viable, the Defendants are entitled to immunity.

## STATEMENT OF FACTS

Plaintiff alleges in his Complaint that on January 7, 2016, in St. Mary's County, he had interactions with Defendants Marcus Manning and Evan Krenik, both of whom serve as Maryland State Troopers. Compl. at ¶ 1, 5, 7. Plaintiff claims that he was "startled" by Trooper Manning's driving, so he flashed his lights at Trooper Manning and "pursued Manning and caught up with him at a traffic light." *Id*. at ¶ 9. The two cars pulled into a gas station where Plaintiff attempted to confront Trooper Manning, but Trooper Manning quickly left the scene. *Id*. at ¶ 10-12. Apparently not satisfied with this result, Plaintiff got back in his car and again pursued Trooper Manning a second time. *Id*. at ¶ 13. This time, Trooper Manning pulled behind Plaintiff and activated his lights. *Id*. Despite this signal to pull over, Plaintiff concedes he did not stop and drove all the way home because he "feared for his safety." *Id*. at ¶ 14-16.

When Plaintiff finally stopped at his house, Trooper Manning stopped as well and was joined by multiple police officers including Defendant Trooper Evan Krenik. *Id*. at ¶ 18. Plaintiff alleges Troopers Manning and Krenik decided to arrest him for fleeing and eluding. *Id.* at ¶ 22. During his arrest, Plaintiff claims he was handcuffed from behind despite his assertion that he told Troopers Manning and Krenik that he suffered from a previous medical issue and needed to

be handcuffed in the front. *Id*. at ¶ 25-27. Plaintiff also claims that he was placed into an MSP vehicle over his objection and his legs were "forced" into the vehicle. *Id*. at ¶ 33. The only force alleged in Plaintiff's Complaint is the handcuffing from behind and the fact that he was "forced" into the police vehicle. *Id*.

In addition to the allegations in the Complaint, Defendants also submit limited summary judgment materials. Attached is a true test copy of a court document establishing that on May 20, 2016, Plaintiff was convicted of the charge of eluding a police officer in violation of Md. Code Ann., Trans. §21-904(c). *See* Exhibit No. 1. This conviction occurred in the District Court of Maryland for St. Mary's County. *Id*. Plaintiff received a probation before judgment on this claim and remains on probation until May 20, 2018. *Id*. Plaintiff is subject to seven conditions of probation including alcohol and substance abuse programs and driver improvement programs. *Id*.

## PLAINTIFF'S CLAIMS

Plaintiff has filed a Complaint in this Court naming Troopers Manning and Krenik as the only two defendants. Plaintiff brings five causes of action against the two Defendants: Count 1 alleges a 42 U.S.C. § 1983 claim alleging both an improper arrest and excessive use of force; Count 2 alleges a State false arrest claim; Count 3 alleges a State battery claim; Count 4 alleges a State gross negligence claim; and Count 5 alleges a violation of Article 26 of the Maryland Declaration of Rights.

## LEGAL STANDARDS

### I.    Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal for "failure to state a claim upon which relief can be granted." In two seminal opinions, the Supreme Court has explained the threshold requirements concerning the sufficiency of pleadings and has clarified that while Rule 8 imposes no "hyper-technical" pleading requirement, it also "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rather, when the facts asserted could not raise an entitlement to relief "this basic deficiency should. . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

As *Twombly* expounded, and *Iqbal* confirmed, the standard of sufficiency for federal pleadings "demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint must pass a plausibility test that "asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id*. Instead, Rule 8 "'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Twombly*, 550 U.S. at 1965, n. 3 (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1202 at 94-95 (3rd Ed.

2004)). Under these standards, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-679.

## II.    Summary Judgment

A motion for summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In assessing a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. A complete failure of proof "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

**I.     All of Plaintiff's Claims Alleging False Arrest Fail Because Allegations In Plaintiff's Complaint Establish Probable Cause As A Matter Of Law And Plaintiff was Subsequently Convicted Of Eluding A Police Officer.**

### A.     All of Plaintiff's Unlawful Arrest Claims Are negated By The Existence of Probable Cause.

Plaintiff alleges a number of causes of action based on what he claims to be an improper arrest. These include a federal § 1983 claim[1] (Count 1), a Maryland

---

[1] Plaintiff's § 1983 claim purports to be brought pursuant to both the Fourth and Fourteenth Amendments. As to the arrest facet of this claim, the Fourteenth Amendment does not appear to be applicable to this situation. *See Albright v. Oliver*, 510 U.S. 266,

common law false arrest claim (Count 2); and a claim based on Art. 26 of the Maryland Declaration of Rights (Count 5).

All of these causes of action have one thing in common; they all require the actions to be based on a lack of probable cause.  A warrantless arrest violates the Fourth Amendment only if it lacks probable cause. *See District of Columbia v. Wesby* 138 S.Ct. 577, 586 (Jan. 22, 2018); *Brown v. Gilmore*, 278 F.3d 362, 367-68 (4th Cir. 2002). Similarly, the Maryland tort of false arrest requires a lack of legal justification.  *See Ashton v. Brown*, 339 Md. 70, 119-120 (1995); *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643 (1970).    The State Constitutional claim related to the arrest also requires probable cause*.  See DiPino v. Davis*, 354 Md. 18, 30 (1999).

The Supreme Court has defined probable cause as "a fair probability" that would lead a reasonable police officer to believe a crime occurred.  *Illinois v. Gates,* 462 U.S. 213, 238 (1983).  Maryland similarly defines probable cause as "facts and circumstances" that are "'sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *DiPino*, 354 Md. at 32 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).[2]   As recently as a couple of weeks ago, the Supreme Court reiterated that

---

273-74 (1994) (no Fourteenth Amendment due process rights regarding arrest without probable cause).

[2] It is not surprising that the definitions of probable cause in Maryland is similar to the federal definition since claims brought pursuant to Art. 26 of the Maryland Declaration of Rights are generally construed *in pari materia* with the Fourth Amendment. *See Henry v. Purnell*, 652 F.3d 524 (2011) (en banc).

probable cause is "not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby* 138 S.Ct. at 586 (quoting *Gates*, 462 U.S. at 243-244).   The *Wesby* Court warned against an "excessively technical dissection" of the facts supporting probable cause. *Id*. at 588.

When these concepts of probable cause are applied to this case, it becomes clear that the two Trooper Defendants had sufficient probable cause to arrest Plaintiff.  This is true based on the allegations of Plaintiff's Complaint and is further confirmed by the fact that Plaintiff was found guilty of the crime of eluding a police officer in Maryland District Court.

> **B.     There Was Sufficient Probable Cause To Make An Arrest For Eluding A Police Officer Based Solely On The Allegations In Plaintiff's Complaint.**

Plaintiff was arrested and charged with eluding a police officer. See Exhibit No. 1.  The prohibited conduct for this offense is proscribed by Md. Code Ann., Trans. §21-904(c), which provides that:

> (c) if a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by:
>
> > (1) Willfully failing to stop the driver's vehicle;
> > (2) Fleeing on foot; or
> > (3) Any other means.

Md. Code Ann., Trans. §21-904(c).  The Statute defines "visual or audible signal" as "a signal by hand, voice, emergency light or siren." *Id*. at §21-904(a).  A person

found guilty of this offense is subject to up to one year imprisonment for a first offense, and up to two years imprisonment for any subsequent offense. *Id.* at §21-904(f).[3]

Without leaving the confines of Plaintiff's Complaint, it is clear that Troopers Krenik and Manning had probable cause to arrest Plaintiff for this crime. Plaintiff concedes that Trooper Manning pulled behind him and activated his lights, which is undeniably a signal to stop. Compl. at ¶ 13.  Plaintiff also admits that despite Trooper Manning's attempt to pull him over, "he continued to drive" and in fact drove all the way home.  *Id.* at ¶ 14-17.  Thus, it would be reasonable for any police officer in Trooper Manning's position to believe that Plaintiff was "willfully failing to stop" his vehicle in violation of the statute.

Plaintiff, in his Complaint, does attempt to mitigate his failure to stop for Trooper Manning, but these assertions, do not negate probable cause.  Plaintiff claims he "feared being alone" with Trooper Manning, that he called Police, and that he just wanted to "drive to a safer location."  Compl. at ¶ 14-16.   Even if these claims are true, there is nothing in the statute that suggests these circumstances negate the crime of eluding a police officer.  Plaintiff still failed to stop when Trooper Manning attempted to pull him over.  While Plaintiff certainly could have raised these arguments as potential defenses during any criminal trial on the charges, these arguments do not negate probable cause.  Plaintiff's failure

---

[3]  Enhanced penalties can occur for this offense if the pursuit results in bodily injury to another person or if the suspect is fleeing from a crime of violence. Trans §21-904(f).

to stop for Trooper Manning once he activated his lights establishes probable cause as a matter of law and all the claims related to allegations of an improper arrest should be dismissed pursuant to Rule 12(b)(6).

C.    **The Fact That Plaintiff Was Found Guilty Of Eluding A Police Officer Establishes Probable Cause As A Matter Of Law.**

The materials attached to this Motion establish that Plaintiff was found guilty of violating Trans §21-904(c) and received a probation before judgment. See Exhibit No. 1.  This conviction establishes that there was probable cause for Troopers Manning and Krenik to arrest Plaintiff.   A conviction "conclusively establishes the existence of probable cause" in subsequent civil tort proceedings. *Zoblonsky v. Perkins*, 230 Md. 365, 368-69 (1963) (quoting Restatement, Torts § 667); *see also Quecedo v. DeVries*, 22 Md. App. 58 (1974) (conviction establishes probable cause even if subsequently reversed).  Because probable cause is a much lower standard than beyond a reasonable doubt, a conviction necessarily includes a finding of probable cause.

The fact that Plaintiff received a probation before judgment for this conviction does not change this result.  The Maryland statute creating probations before judgment allows Maryland judges to stay entry of judgment, but only after the defendant "pleads guilty or nolo contendere or is found guilty of a crime." Md. Code Ann., Crim Pro. § 6-220.  The Court of Special Appeals has confirmed that "a determination of guilt must precede the granting of probation before judgment." *Howard Co. Dept. of Social Serv. v. Linda J*., 161 Md. App. 402, 409 (2005).  A

9

probation before judgment simply cannot exist unless there has been a finding of guilt.  In addition to a finding of guilt, a probation before judgment can only be given if it's in "the best interests of the defendant and the public welfare would be served." Crim Pro. § 6-220(b).  The Statute also requires "written consent" of a criminal defendant to a probation before judgment. *Id*.

It is clear from this statutory scheme that the ability to stay entry of judgment was created as a benefit to criminal defendants to avoid a permanent conviction on their record.  There is nothing in the statute suggesting that a probation before judgment should be found when there is some lower standard of guilt.  A probation before judgment is a guilty finding in which the conviction gets stricken for the benefit of the criminal defendant.  To negate the probable cause determination in this situation would penalize police with potential civil liability when a criminal defendant receives the significant benefits of a probation before judgment.

Both Maryland and federal case law confirm the conclusion that convictions that are stricken or reversed still establish probable cause in later civil proceedings as a matter of law.  Several Maryland cases have held that a criminal conviction, unless obtained by fraud, establishes probable cause as a matter of law even if that conviction was subsequently reversed on appeal. *See Zoblonsky v. Perkins*, 230 Md. 365, 368-69 (1963) (holding that a conviction establishes probable cause even if subsequently reversed unless obtained by fraud); *Quecedo v. DeVries*, 22 Md. App. 58, 69 (1974) (same).  The Fourth Circuit has similarly

found that a criminal conviction establishes probable cause even if that conviction is subsequently reversed. *See Asuncion v. City of Gaithersburg*, 73 F.3d 356 (1996) (unpublished*); see also See Gray v. Maryland*, 2004 WL 2191705 (D. Md. 2004) (unpublished) (same). This Court has specifically held in a probation before judgment case that the probable cause determination made during a probation before judgment proceeding precludes a civil claim for false arrest. *Jenson v. Phillips*, 2017 WL 121772 (D. Md. 2017) (unpublished).

These cases establish that if a judge makes a determination that a criminal defendant is guilty of a crime, this determination precludes subsequent civil claims claiming a lack of probable cause for arrest or prosecution even when the conviction is reversed or a probation before judgment is entered. The crucial determination is that a neutral judicial magistrate has reviewed the facts and determined guilt beyond a reasonable doubt. This determination is not compromised by a probation before judgment. Plaintiff was found guilty of eluding a police officer. There is no suggestion that this conviction was obtained by fraud. If a judge determined that Plaintiff was guilty of eluding a police officer, Troopers Manning and Krenik unquestionably had probable cause to arrest him. This judicial determination of probable cause now precludes all of Plaintiff's false arrest claims.

II.     **Plaintiff's Excessive Force Claims Fail As A Matter Of Law Because Defendants Used Reasonable Force To Make A Lawful Arrest.**

Plaintiff brings several excessive force type claims in his Complaint including § 1983 claim alleging excessive force (Count 1); a State battery claim (Count 3); a State gross negligence claim (Count 4); and Article 26 of the Maryland Declaration of Rights claim (Count 5). The allegations in Plaintiff's Complaint relating to the excessive force claims, however, are sparse. He alleges that he was handcuffed from behind even though he vocalized the fact that that he suffered from a previous medical issue and needed to be handcuffed in the front. Compl. at ¶ 25-27. Plaintiff also claims that he was forced into a MSP vehicle over his objection and his legs were "forced" into the vehicle. *Id*. at ¶ 33. Other than these two allegations, there are no other claims regarding the purportedly improper or excessive force. These allegations are insufficient as a matter of law to support Plaintiff's various excessive force claims.

A.     **Plaintiff's Constitutional Claims Alleging Excessive Force Fail As A Matter Of Law (Counts 1 and 5).**

The starting point for any constitutional claim of excessive force is the Supreme Court's opinion in *Graham v. Connor*, 490 U.S. 386, 396 (1989). The *Graham* Court held that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. The test for reasonableness is an objective one; "the question is whether the officers' actions are 'objectively reasonable' in

light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* The Maryland Court of Appeals adopted the *Graham* reasonableness standard for evaluating excessive force claims brought pursuant to the Maryland Declaration of rights. *See Richardson v. McGriff*, 361 Md. 437, 452-53 (2000); *see also Randall v. Peaco,* 175 Md. App. 320, 329 (2007) (applying *Graham* and *Richardson* reasonableness standard to a summary judgment determination).  Therefore, both the § 1983 claim (Count 1) and the Maryland Declaration of Rights claim (Count 5) can be analyzed pursuant to the *Graham* reasonableness standard.

Crucial to the reasonableness analysis in this case is the fact that Troopers Manning and Krenik lawfully arrested Plaintiff.  Section 1 above establishes that that Troopers Manning and Krenik had probable cause to arrest Plaintiff based on the allegations in the Complaint as well as based on the Exhibits attached to this Motion establishing Plaintiff was convicted of eluding a police officer.  The use of force analysis, therefore, must be viewed through the lens of a lawful arrest.

The Supreme Court has recognized that the right to make an arrest carries with it the right to use the force necessary to make the arrest. In *Graham*, the Court noted that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  The Supreme Court explained the reasoning behind this as follows:

> Every arrest must be presumed to present a risk of
> danger to the arresting officer. There is no way for an
> officer to predict reliably how a particular subject will
> react to arrest or the degree of the potential danger.
> Moreover, the possibility that an arrested person will
> attempt to escape if not properly supervised is obvious.

*Washington v. Chrisman*, 455 U.S. 1, 7 (1982).

Handcuffing is certainly part of the force used to effect a lawful arrest and the law is clear that handcuffing suspects who have been lawfully arrested rarely amounts to excessive force.  The Fourth Circuit has proclaimed that "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified ... in effecting the underlying arrest."  *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002).  In *Brown*, not only did the Plaintiff make a claim of injury resulting from handcuffs, but she, like the Plaintiff in this case, claimed to be pushed into the police car. *Id*.  The Fourth Circuit rejected both of these acts as excessive force, holding that if courts refused to allow this kind of force, "we would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability." *Id*. at 369-70.  This sentiment echoes *Graham's* admonition that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396

The fact that Plaintiff claims a pre-existing injury preventing handcuffing from behind does not change this result. There is nothing alleged in the Complaint suggesting that the two Troopers should have known about the injury other than

Plaintiff's verbal claims.  There was no visual sign of injury and Plaintiff presented no documentation as to the injury.  Officers ignoring claims of "invisible injury" while handcuffing arrestees from behind during a lawful arrest does not constitute excessive force. *See Hunt v. Massi*, 773 F.3d 361, 370 (1st Cir. 2014) (quoting *Beckles v. City of N.Y.,* 492 Fed.Appx. 181, 183 (2d Cir.2012)).

 The First Circuit's opinion in *Calvi v. Knox County*, 470 F.3d 422 (1st Cir. 2006) is persuasive here.  In *Calvi*, police officers responded to a report of a woman brandishing a knife in a residence. The suspect's landlord advised the police officers that she had recently undergone elbow surgery and asked them to be gentle. The police officer "did not observe any debilitating condition," and handcuffed the suspect according to the "[s]tandard police practice" with her hands behind her back.  *Calvi*, 470 F.3d at 428.   The Court held that handcuffing this suspect, even with the warning, did not constitute excessive force.  *Id.*

In this case, Plaintiff was properly arrested, and like most other arrestees, was handcuffed from behind.  It was reasonable for Troopers Manning and Krenik to handcuff Plaintiff in this manner because there was no visual sign of injury. There are no allegations in the Complaint that would take this ordinary use of force into the realm of the unreasonable or excessive.  Plaintiff's constitutional excessive force claims, therefore, are meritless.

It should also be noted that Plaintiff has brought the excessive force § 1983 claim pursuant to both the Fourth and Fourteenth Amendments.  The Fourth Amendment applies to force employed during an arrest. *See Robles v. Prince*

*George's County*, 302 F.3d 262, 269 (4th Cir. 2002). Once a person has been arrested and becomes a pretrial detainee, the use of force is governed by the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). In *Orem*, for instance, the Fourth Circuit held that the claim fell under the Fourteenth Amendment when the use of force was employed after the arrestee was secured for transportation to a booking facility, but had loosened her shackles en route, necessitating a use of force when she resisted efforts to re-secure her in the vehicle. *Id.* at 444-45.

Certainly, the initial handcuffing and placing Plaintiff in the police car would be analyzed under the Fourth Amendment *Graham* standard. It is possible, however, that during the course of Plaintiff's transport to the Barrack, the claim converts to a Fourteenth Amendment claim. The Fourteenth Amendment requires Plaintiff to establish that the use of force "inflicted unnecessary and wanton pain and suffering." *Orem,* 523 F.3d at 446. This is a higher standard than the Fourth Amendment reasonableness test which does not require the punitive or malicious intent required for Fourteenth Amendment claims. *See Graham v. Connor*, 490 U.S. at 397 (requirement to maliciously cause harm encompassed in the Fourteenth Amendment but not the Fourth Amendment). Because Defendants have established that the lower Fourth Amendment reasonableness standard has been met, it is of no consequence if the claim converts to a Fourteenth

Amendment claim during Plaintiff's transport as this higher standard is easily satisfied by the facts of this case.

> **B.    Plaintiff's Battery Claim Must Fail Because Troopers Manning and Krenik Were Justified In Using Force When Arresting Plaintiff (Count 3).**

In Count 3, Plaintiff alleges that both Defendants committed the common law tort of battery.  Under Maryland law, battery is the "unlawful application of force to the person of another." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991).  A police officer, however, is not liable for battery when using a reasonable amount of force to effectuate a lawful arrest. *See Ashton v. Brown*, 660 A.2d 447, 471 n.24 (Md. 1995); *Hines v. French*, 157 Md. App. 536, 551 (2004) (quoting *Williams v. Prince George's County*, 112 Md. App. 526, 554 (1996)).

Here, Troopers Manning and Krenik properly arrested Plaintiff for the crime of eluding a police officer.  They were entitled to use reasonable force to effectuate this arrest, which they did by handcuffing Plaintiff, placing him into the car, and transporting him for booking.  Under these circumstances, the two Troopers cannot be liable for battery under Maryland law.

> **C.    There Are No Facts Suggesting Troopers Manning And Krenik Acted With Gross Negligence (Count 4).**

In Count 4, Plaintiff claims that Troopers Manning and Krenik acted with gross negligence when they used force against Plaintiff.  Maryland law sets a high bar for plaintiffs attempting to establish gross negligence. To state a claim for gross negligence, a plaintiff must allege facts establishing "an intentional failure to

perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez,* 443 Md. 680, 708 (2015) (quoting *Barbre v. Pope,* 402 Md. 157 (2007)). The Maryland Court of Appeals has reiterated that a party is grossly negligent only if he or she "inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts as if such rights did not exist." *Cooper,* 443 Md. at 708.

It is clear that Troopers Manning and Krenik acted reasonably in this case and their actions can in no way be characterized as grossly negligent. It was reasonable for the two Troopers to handcuff Plaintiff from behind and transport him to the Barrack because Plaintiff was lawfully arrested and had no visual sign of any injury preventing handcuffing from behind. Given these circumstances, this conduct cannot constitute an intentional or "utterly indifferent" infliction of harm. Plaintiff's Complaint is full of conclusory allegations of gross negligence, but Plaintiff does not provide any facts that would allow a trier of fact to find the Defendants liable for gross negligence. Consequently, the gross negligence claim should be dismissed.

### III.  Troopers Manning And Krenik Are Entitled To Immunity On All Counts.

#### A.  Troopers Manning And Krenik Are Entitled To Federal Qualified Immunity For The 42 U.S.C. § 1983 Claim (Count 1).

Public officials such as police officers are immune from suit under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity involves a two prong test: (1) whether the facts alleged or shown establish a violation of a constitutional right; and (2) whether the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Supreme Court has recently emphasized that "clearly established law" should "not be decided at a high level of generality," but instead the clearly established law must be "particularized" to the facts of the case and the law determined "beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (*per curiam*). This specificity is "especially important in the Fourth Amendment context" because it is often difficult for a police officer to know how legal doctrine will apply to a particular factual situation. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*).

### 1. Defendants Manning And Krenik Had At Least Arguable Probable Cause To Arrest Plaintiff.

In cases alleging a lack of probable cause, qualified immunity only requires probable cause to be arguable. The reasonableness of Troopers Manning and Krenik's conduct "does not turn on whether probable cause was, in fact, present;" the relevant inquiry instead is whether the two Troopers "could have reasonably thought there was probable cause." *Smith*

*v. Reddy*, 101 F.3d 351, 357 (4th Cir. 1996).  The Supreme Court has recognized that "it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause is present." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  In such cases, the Court has further recognized, "those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Id.*  As a result, qualified immunity protects police officers who make "bad guesses in grey areas."  *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002).

The Supreme Court's recent opinion in *District of Columbia v. Wesby* 138 S.Ct. 577, 586 (Jan. 22, 2018) is instructive here.  In *Wesby*, Police officers arrested party goers at a house for trespassing when it was not clear whether these party goers had permission to be in the house.  The Supreme Court held that even if the officers lacked actual probable cause, "the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'"  *Wesby* 138 S.Ct. at 591(quoting *Anderson,* 483 U.S. at 641).  The *Welsby* Court once again  stressed the specificity required to have preexisting law preclude qualified immunity, holding that if there is not a case on point, existing precedent must place the issue "beyond debate." *Id*. at 590.

Here, it is clear that Troopers Manning and Krenik had at least arguable probable cause to arrest Plaintiff for eluding police officers.  The

facts taken as true form Plaintiff's Complaint establish that Trooper Manning signaled for Plaintiff to stop, and that Plaintiff chose not to stop but instead drive to his home. This alone violates Md. Code Ann., Trans. §21-904(c). This conduct definitively gave the two Troopers arguable probable cause to make an arrest. There is no existing law that would suggest that this arrest was improper and Troopers Manning and Krenik's actions are protected by qualified immunity.

> 2.    **There Is No Clearly Established Law Providing A Reasonable Police Officer With Notice That Handcuffing An Arrestee From Behind Without A Visual Injury Constitutes Excessive Force.**

The Fourth Circuit, just several weeks ago, in a published opinion, has addressed qualified immunity relating to handcuffing and excessive force. *See E.W. v. Dolgos*, ─── F.3d ───,  2018 WL818303  (4th Cir. Feb. 12, 2018).   In *Dolgos*, police arrested a peaceful ten year girl and placed her in handcuffs. The Court, placing significant reliance on the girl's young age, found the handcuffing to be unreasonable. *Id.* at *8. However, when the Court proceeded to the qualified immunity analysis, it found that there was no authority that would have given the officers notice that handcuffing in this situation was unconstitutional. *Id.* at *9. Even before the *Dolgos* case, the Fourth Circuit had held that "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified ... in effecting the underlying arrest." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002).   These cases certainly would not give a

reasonable officer notice that the kind of handcuffing that occurred in this case was unconstitutional.

While it does not appear that the Fourth Circuit has addressed the issue, the First Circuit has held that officers are entitled to qualified immunity in this situation. In *Hunt v. Massi*, 773 F.3d 361, 370 (1st Cir. 2014), police officers handcuffed a suspect from behind despite the fact that he indicated health reasons prevented this method. The First circuit held that the officers were entitled to qualified immunity because "a reasonable officer would not have understood his or her decision to handcuff Hunt with his arms behind his back to constitute excessive force." *Id.* at 370. The Tenth Circuit, in an unpublished opinion, also found that handcuffing a suspect who's arm was full of "plates and screws" did not constitute excessive force." *Wells v. Okla. ex rel. Dep't of Pub. Safety,* 97 F.3d 1465, 1996 WL 557722 (10th Cir. Sept. 30, 1996) (unpublished). The Sixth Circuit has come to the opposite conclusion holding that handcuffing an injured suspect from behind even without a visible sign of injury does constitute excessive force. *See Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993). The *Walton* Court, however, came to this conclusion relying solely on the general notion that police cannot engage in excessive force without citation to any specific cases. *Id.* at 1342. This reasoning, provided almost twenty-five years ago, would almost certainly not survive the Supreme Court's recent cases requiring qualified immunity to be determined at a high level of specificity.

Given that the Supreme Court demands a level of specify for a right to be clearly established and the fact that the Fourth Circuit does not appear to have directly addressed the issue but has granted qualified immunity recently in a related handcuff situation, the inevitable conclusion in this case is that Trooper Manning and Krenik are entitled to qualified immunity. The allegations in the Complaint suggest the excessive force used in this case merely consists of officers handcuffing Plaintiff from behind against his wishes without any visible sign of injury and a push into a patrol car. There is no clearly established law that would put Troopers Manning and Krenik on notice that their actions violated Plaintiff's constitutional rights and, as a result, they are protected from immunity on the § 1983 claim.

### B. Troopers Manning and Krenik Are Entitled To Maryland Statutory Immunity For All The Maryland Claims (Counts 2 thru 5).

Maryland law provides that state personnel are immune from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence. Troopers are "State personnel" as defined by Md. Code Ann. State Gov't § 12-101, and Maryland law is clear that State personnel have a qualified immunity from liability as prescribed by statute. *See* Md. Code Ann., State Gov't § 12-105 and Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). This statute provides that:

> State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the

> public duties of the State personnel and is made without malice or
> gross negligence, and for which the State or its units have waived
> immunity under Title 12, Subtitle 1 of the State Government Article,
> even if the damages exceed the limits of that waiver.

*Id.* The statutory immunity granted in § 5-522(b) applies to intentional torts and constitutional torts. *See Hines v. French*, 157 Md. App. 536, 557, n. 5 (2004); *Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107, 132-143 (2002)). Here, Plaintiff has not adequately pled or established malice and the claims against Troopers Krenik and Manning should be dismissed.

To act with malice, an official must engage in "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud....'" *Shoemaker v. Smith,* 353 Md. 143, 163 (1999) (quoting *Montgomery Ward v. Wilson,* 339 Md. 701, 728 n. 5, 664 A.2d 916, 929 n. 5 (1995)). And as noted above, gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez,* 443 Md. 680, 708 (2015) (quoting *Barbre v. Pope,* 402 Md. 157 (2007)). "Merely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Elliott v. Kupferman,* 58 Md. App. 510, 528 (1984).

Here, Plaintiff has not alleged gross negligence or malice in order to overcome this immunity.  There are no facts Plaintiff can point to that establish malice or gross negligence.  Plaintiff's Complaint contains numerous conclusory statements that Troopers Manning and Krenik acted with malice and gross negligence, but not facts.  The only facts in the Complaint are that Plaintiff was stopped, arrested, and handcuffed.  There are no additional facts suggesting that the two Troopers acted with malice or gross negligence.  This was no more than a stop, arrest and standard handcuffing.    There are no facts suggesting Troopers Manning and Krenik acted with ill will or gross negligence.  As a result, they are entitled to Maryland statutory immunity.

## CONCLUSION

For the reasons stated above, Defendants   Evan Krenik and Marcus Manning respectfully requests this Court to Dismiss the Complaint against them or enter summary judgment in their favor.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland
_____/s/_____
PHILLIP M. PICKUS
(Bar No. 22814)
Assistant Attorneys General
1201 Reisterstown Road
Pikesville, Maryland 21208
(410) 653-4293 (telephone)
(410) 653-4270 (facsimile)
Phillip.pickus@maryland.gov

*Counsel for Defendant*

25