IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| ARTHUR STUTZMAN | |
|---|---|
| Plaintiff | |
| v. | Case No: **17-cv-03841-TDC** |
| EVAN KRENIK, *et al.* | |
| Defendants | |

**AMENDED COMPLAINT**
(42. U.S.C. § 1983 and related state claims
pertaining to unreasonable seizure)

**WITH JURY TRIAL DEMAND**

Arthur Stutzman, Plaintiff, by and through undersigned counsel, files this Complaint and states:

1. Events herein occurred on January 7, 2016, in St. Mary's County, Maryland.

2. This complaint contains a claim under 42 U.S.C. § 1983 with federal issue jurisdiction under 28 U.S.C. § 1331. There are related state law claims over which the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

3. The Plaintiff has claims against the State of Maryland under the

Maryland Tort Claims Act that are in the alternative to the state law counts herein. On the state claims, if the involved troopers acted with malice or gross negligence, they are liable and the State is not; if the involved troopers acted without gross negligence or malice, the State is liable and the troopers are not. These are jury issues. The Plaintiff reserves all rights in such claims against the State.

4. The Plaintiff, Arthur Stutzman ("STUTZMAN"), is a natural person residing in St. Mary's County, Maryland.

5. Defendants Evan Krenik ("KRENIK") and Marcus Manning ("MANNING") were at all times herein officers/troopers of the Maryland State Police, acting within the scope of that employment, and under color of the statutes, ordinances, regulations, customs, or usages, of the government of the State of Maryland.

6. Prior to January 7, 2017, STUTZMAN served a notice of claim in compliance with Ann. Code of Md., State Government § 12-107. Additionally, prior to January 7, 2017, the State had actual or constructive notice of STUTZMAN's injury or the circumstances giving rise to his injury.

7. On January 7, 2016, during nighttime hours, STUTZMAN was

driving on Route 5 south past Route 231, when MANNING drove past him, without lights activated and without emergency, at approximately 90 miles per hour in a zone with a speed limit of 55 miles per hour. In addition to speeding, MANNING zigzagged through traffic and aggressively tailgated another vehicle.

8. MANNING's driving startled and alarmed STUTZMAN.

9. STUTZMAN then followed after MANNING and caught up with him at a red traffic light.

10. STUTZMAN also contacted the Maryland State Police barracks in La Plata to report MANNING's reckless driving (STUTZMAN used a hands-free calling device).

11. STUTZMAN flashed his lights to get MANNING's attention, pulled aside MANNING, and asked MANNING to pull into the gas station there.

12. STUTZMAN peacefully confronted MANNING about MANNING's reckless driving.

13. MANNING acted dismissively and left, driving aggressively from the gas station.

14. STUTZMAN then continued home. MANNING was a distance

ahead, but then slowed down, pulled off the road, stopped, got behind STUTZMAN, activated the vehicle's lights, and attempted to effect a traffic stop of STUTZMAN for speeding.

15. STUTZMAN had not been speeding or breaking any traffic laws. There was no reasonable articulable suspicion or other lawful basis for MANNING to stop STUTZMAN.

16. The stop of STUTZMAN was retaliatory for STUTZMAN's reprimand of MANNING.

17. STUTZMAN, concerned about MANNING's aggressive behavior, feared for his safety. STUTZMAN feared being alone with MANNING as the only reason to stop STUTZMAN would be to retaliate out of anger for STUTZMAN having confronted MANNING.

18. STUTZMAN called the police station (Maryland State Police La Plata barracks) to request assistance, and advised police where he was driving and why.

19. STUTZMAN was not wilfully fleeing or eluding; he continued driving to arrive at a safer location and to have police backup for his safety.

20. STUTZMAN arrived home and stopped. MANNING exited his

vehicle and began yelling at STUTZMAN.

21. Numerous additional state and county police officers arrived, including KRENIK.

22. KRENIK and MANNING were visibly and audibly annoyed and angry at STUTZMAN for his various actions.

23. KRENIK and MANNING were aware that STUTZMAN did not continue driving for the purpose of feeling or eluding, but to get to a safer location and await police assistance.

24. There was no warrant or probable cause to arrest STUTZMAN.

25. KRENIK and/or MANNING made the decision to arrest STUTZMAN for fleeing or eluding police.

26. The arrest of STUTZMAN was retaliatory for STUTZMAN's reprimand of MANNING.

27. KRENIK and/or MANNING made the decision to arrest STUTZMAN for fleeing or eluding police.

28. All actions by KRENIK and MANNING against STUTZMAN were with gross negligence and/or malice toward STUTZMAN for having challenged a police officer. Their actions against him were done with retaliatory and punitive purpose. (In the alternative to claims against the

State of Maryland.)

**29.** STUTZMAN, 59 years old at the time and additionally severely physically disabled with spinal conditions (and surgeries), walked and moved in a way manifesting genuine physical disability.

**30.** The following interactions occurred between STUTZMAN and KRENIK (not intended to be a precise transcript, but reasonably reflects the interactions):

```
1    KRENIK: Mr. Stutzman, we're going arrest you for eluding the
2    police.

3    STUTZMAN: I understand. Would you please cuff me in front, I
4    have metal and screws in my lower back. I have thoracic issues.
5    And I've had two cervical surgeries.

6    KRENIK [coldly]: No.

7    STUTZMAN: I've had multiple spine surgeries. I've been cuffed in
8    the past in the front because of it. I'm begging you to please not put
9    my hands behind my back, I cannot physically do that.

10   KRENIK [coldly]: No, I have to cuff you behind your back, that's
11   the way we have to do it.

12   STUTZMAN [begging]: This is going to injure me, I cannot have
13   my hands cuffed me behind that tight. I need to be cuffed in the
14   front and allowed to lie down in the back of a vehicle.

15   KRENIK [angry and annoyed]: You are not in charge here, you are
16   under arrest.

17   [KRENIK started putting handcuffs on STUTZMAN from behind.]
```

18  STUTZMAN [begging]: I understand I'm under arrest, I'm not
19  trying to be in charge, I'm just trying to explain to you I cannot
20  have my hands behind my back. I've been to doctors and therapy
21  and have been taught what I can and cannot do. This is something I
22  cannot do.

23  [KRENIK forced STUTZMAN's hands behind his back and cuffed
24  him; STUTZMAN loudly screamed from severe and obvious pain
25  and discomfort.]

26  [KRENIK walked STUTZMAN to the car. STUTZMAN was in
27  visibly obvious and severe pain]

28  KRENIK [angry and annoyed]: Get in the front seat.

29  [KRENIK's back seat was according to KRENIK unavailable, but
30  there were other vehicles on scene with available seats.]

31  STUTZMAN [begging]: I can't get in the car handcuffed. Can I get
32  into one of the other vehicles here so I can get in without injuring
33  my back. There's no way I can get in the car.

34  [A county officer offered his vehicle so that STUTZMAN could lie
35  down. KRENIK refused.]

36  KRENIK [angry and annoyed]: No. You have to try.

37  [STUTZMAN sat down but was physically unable to bring both
38  legs into the vehicle. STUTZMAN's actions, movements,
39  statements, and demeanor showed obvious and severe pain and
40  disability and an inability to have his legs in the vehicle while
41  handcuffed from behind.]

42  STUTZMAN: This is as far as I can go.

43  [KRENIK then grabbed STUTZMAN's right leg and tried to force
44  it into the vehicle, causing injury and excruciating pain.
45  STUTZMAN screamed in pain and started crying.]

31. KRENIK was angry at STUTZMAN and refused STUTZMAN's requests for malicious, retaliatory, and punitive purposes.

32. KRENIK then assisted STUTZMAN out of the vehicle.

33. KRENIK, rather than cuff STUTZMAN from the front, had a second set of cuffs placed on STUTZMAN from behind, and had STUTZMAN lie down in the back of another cruiser (which had been available from the start and was offered to KRENIK but he refused).

34. STUTZMAN was then transported to jail with KRENIK following in another vehicle. Although he was in another vehicle, STUTZMAN remained in KRENIK's custody.

35. Upon request, the transporting officer stopped as STUTZMAN was in excruciating pain during transport.

36. During the stop, KRENIK got out of vehicle and approached. STUTZMAN explained the excruciating pain the cuffing and transport was causing. KRENIK yelled at STUTZMAN and ordered the transport to continue.

37. The remainder of the transport caused excruciating pain.

38. As a result of the arrest, cuffing, moving, and transport, STUTZMAN suffered additional, serious, disabling, and permanent

injury to his back and worsening of his pre-existing condition, including but not limited to one disc bulging and another disc pressing on a nerve.

39. Before the incident, STUTZMAN's spine condition was stable; while his movement was limited, his pain was managed. Since and because of the incident, STUTZMAN has suffered chronic pain that has not responded to the pain management regimen that was successful before the incident. Also because of the incident, STUTZMAN's mobility has worsened. The back pain caused by the incident has also caused chronic headaches, low neck, chest, and shoulder pain.

40. At the station, STUTZMAN remained in KRENIK's custody throughout the booking process. KRENIK acted maliciously toward STUTZMAN during a booking process that took several hours. As evidence of malice:

    a. Being seating on a stool and cuffed with arm extended caused severe pain to STUTZMAN, which STUTZMAN complained about vocally to KRENIK. KRENIK not only refused to allow different seating, but deliberately delayed the booking.

    b. KRENIK maintained a sarcastic and intimidating tone of voice during all communications with STUTZMAN; for instance,

blaming delays that KRENIK deliberately caused.

    **c.**    KRENIK told STUTZMAN that he would be further delayed by a request for a drug test, which was frivolous.

**COUNT 1 — 4th and 14th Amendments, 42 U.S.C. §1983**

41.    The paragraphs preceding Count 1 are incorporated by reference as if fully set forth herein.

42.    This count is filed against KRENIK and MANNING in their individual capacities.

43.    By stopping and arresting STUTZMAN without legal justification, KRENIK and MANNING, under color of state and local law, violated STUTZMAN's rights under the Fourth (via the Fourteenth) Amendment to the United States Constitution to be free from unreasonable seizures.

44.    By using excessive and unreasonable force (manner of cuffing, moving, and transporting), KRENIK, under color of state and local law, violated STUTZMAN's rights under the Fourth (via the Fourteenth) Amendment to the United States Constitution to be free from unreasonable seizures.

45.    As a direct and proximate result thereof, STUTZMAN suffered loss of liberty and legal expenses ($3,500), and suffered and will continue to

suffer physical and mental injuries, pain and suffering, and health care and disability-related expenses (estimated $500,000 past expenses, $10,000,000 future expenses).

## COUNT 2 — False Arrest

46. The paragraphs preceding Count 1 are incorporated by reference as if fully set forth herein.

47. KRENIK and MANNING falsely arrested STUTZMAN without legal justification. Their actions were intentional and either malicious or with gross negligence.

48. As a direct and proximate result thereof, STUTZMAN suffered loss of liberty and legal expenses ($3,500), and suffered and will continue to suffer physical and mental injuries, pain and suffering, and health care and disability-related expenses (estimated $500,000 past expenses, $10,000,000 future expenses).

## Count 3 — Battery/Excessive Force

49. The paragraphs preceding Count 1 are incorporated by reference as if fully set forth herein.

41. KRENIK battered and used unnecessary and unreasonable force against STUTZMAN (manner of cuffing, moving, and transporting).

KRENIK's actions were intentional and either malicious or with gross negligence.

42. As a direct and proximate result thereof, STUTZMAN suffered and will continue to suffer physical and mental injuries, pain and suffering, and health care and disability-related expenses (estimated $500,000 past expenses, $10,000,000 future expenses).

### Count 4 — Gross Negligence

50. The paragraphs preceding Count 1 are incorporated by reference as if fully set forth herein.

51. KRENIK cuffed, moved, and transported STUTZMAN with gross negligence.

52. As a direct and proximate result thereof, STUTZMAN suffered and will continue to suffer physical and mental injuries, pain and suffering, and health care and disability-related expenses (estimated $500,000 past expenses, $10,000,000 future expenses).

### Count 5 — Article 26, Maryland Declaration of Rights

53. The paragraphs preceding Count 1 are incorporated by reference as if fully set forth herein.

54. KRENIK and MANNING violated STUTZMAN's rights under

Article 26 of the Maryland Declaration of Rights by arresting STUTZMAN without legal justification. Their actions were intentional and either malicious or with gross negligence.

55. KRENIK further violated STUTZMAN's rights under Article 26 of the Maryland Declaration of Rights by using excessive and unreasonable force (manner of cuffing, moving, and transporting). His actions were intentional and either malicious or with gross negligence.

56. As a direct and proximate result thereof, STUTZMAN suffered loss of liberty and legal expenses ($3,500), and suffered and will continue to suffer physical and mental injuries, pain and suffering, and health care and disability-related expenses (estimated $500,000 past expenses, $10,000,000 future expenses).

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff STUTZMAN requests judgment for

    A.    compensatory damages;

(Including but not limited to special damages: $3,500 in legal expenses, $500,000 estimated past health care and disability-related expenses, and $10,000,000 estimated future health care and disability-related expenses.)

    B.    attorney's fees;

C. punitive damages;

D. costs; and

E. post-judgment interest

against Defendants KRENIK and MANNING, jointly and severally, and such other and further relief as may be appropriate.

>Respectfully submitted,
>
>/s/Sean R. Day/s/
>Sean R. Day
>7474 Greenway Center Dr Ste 150
>Greenbelt MD 20770-3524
>301.220.2270 Phone
>301.220.2441 Fax
>*Sean@DayInCourt.Net*
>Attorney for Plaintiff

## **JURY DEMAND**

The Plaintiff hereby requests a jury trial.

>/s/Sean R. Day/s/
>Sean R. Day
>Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, a copy of this document and attachments were served on all counsel of record by ECF.

>/s/Sean R. Day/s/
>Sean R. Day