# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ARTHUR STUTZMAN,

    Plaintiff,

    v.

EVAN KRENIK and
MARCUS MANNING,

    Defendants.

Civil Action No. TDC-17-3841

## MEMORANDUM OPINION

Plaintiff Arthur Stutzman of St. Mary's County, Maryland has filed a civil action against Maryland State Police Troopers Evan Krenik and Marcus Manning alleging that during a traffic stop on the night of January 7, 2016, Defendants arrested him without legal justification and used excessive and unreasonable force in handcuffing, moving, and transporting him after that arrest. Stutzman asserts claims for violations of his rights under the Fourth Amendment to the United States Constitution and Article 26 of the Maryland State Constitution, as well as state common law claims of false arrest, battery, and gross negligence. Presently pending before the Court is Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On January 7, 2016, Stutzman was driving on Maryland State Route 5 south of its junction with Maryland State Route 231. He noticed Manning in a police car zigzagging through

traffic, tailgating another vehicle, and speeding at approximately 90 miles per hour, even though the posted speed limit was 55 miles per hour. The police car's emergency lights were not activated. After Manning drove by him, Stutzman called the Maryland State Police ("MSP") barracks in La Plata, Maryland and reported Manning's apparently reckless driving. Stutzman then followed Manning, catching up to him at a red traffic light. He got Manning's attention by flashing his headlights and asked Manning to pull into a nearby gas station, where he confronted Manning peacefully about his driving. Manning "acted dismissively" and drove away from the gas station. Am. Compl. ¶ 13, ECF No. 12.

As Stutzman drove home from the gas station, Manning pulled behind him and activated his police lights to signal for Stutzman to pull over. Stutzman asserts that he "had not been speeding or breaking any traffic laws" and that the stop was in retaliation for his "reprimand" of Manning. *Id.* ¶¶ 15–16. Rather than stopping at Manning's signal, Stutzman continued driving toward his home and called the MSP barracks to report where he was driving and to "request assistance." *Id.* ¶¶ 18–20. Because of Manning's "aggressive behavior," Stutzman believed that Manning was angry that Stutzman had confronted him and was therefore afraid to be alone with Manning. *Id.* ¶ 17.

After Stutzman and Manning arrived at Stutzman's home, Manning got out of his vehicle and began to yell at Stutzman. Other state and county police officers arrived as well, including Krenik. Both Defendants were visibly angry at Stutzman. At that point, Defendants decided to arrest Stutzman for fleeing or eluding the police.

Stutzman is 59 years old and suffers from a severe physical disability due to spinal conditions and multiple surgeries and thus walks and moves "in a way manifesting genuine physical disability." *Id.* ¶ 29. When Krenik arrested him, Stutzman requested that Krenik

2

handcuff him with his hands in front of his body because he has "metal and screws" in his lower back, "thoracic issues," and he had had two prior cervical surgeries. *Id.* ¶ 30. Krenik refused. Stutzman explained that he could not physically put his hands behind his back, stated that doing so would injure him, and again asked to be handcuffed in front. Krenik again refused. As Krenik went to handcuff Stutzman with his hands behind his back, Stutzman screamed in pain. Stutzman remained "in visibly obvious and severe pain" as they walked to Krenik's vehicle. *Id.* ¶ 30. When Krenik ordered him to sit in the front passenger seat, Stuzman told Krenik that he would not be able to get into the front seat with handcuffs behind his back without incurring injury and asked to be transported in the backseat of another police cruiser. Although another police officer offered to have Stutzman transported while lying down in the back of his police cruiser, Krenik refused to allow it. When Stutzman tried to get into Krenik's vehicle, he physically could not place his legs into the car and was in obvious and severe pain. Krenik then tried to force Stutzman's legs into the car, injuring Stutzman and causing him to scream out in pain and begin to cry. Krenik then took Stutzman out of the vehicle, applied a second set of handcuffs to him from behind, and placed Stutzman in the back of another police cruiser, lying down, to be transported to the police station.

During the ride, Stutzman was in such "excruciating pain" that the police car stopped at one point. *Id.* ¶¶ 35–38. When Stutzman told Krenik that the transport was causing him such pain, Krenik yelled at him and ordered that the car to continue. At the station, Krenik booked Stutzman. Booking took several hours, during which Stutzman was seated on a stool and handcuffed in a way that caused severe pain in his arms. Although Stutzman told Krenik about the pain caused by the stool and handcuffing, Krenik refused to allow him to sit elsewhere and slowed down the booking process. Krenik used "a sarcastic and intimidating tone of voice"

3

throughout booking and ordered a drug test that Stutzman considered frivolous. *Id.* ¶ 40. Stutzman was charged with fleeing or eluding a police officer, in violation of Md. Code Ann., Transp. § 21–904(c) (West 2010). He was fined $500, received a suspended sentence of 180 days of imprisonment, and received a disposition of probation before judgment.

According to Stutzman, as a result of his treatment during the arrest, handcuffing, and transport to the station, he has suffered "additional, serious, disabling, and permanent injury to his back and worsening of his pre-existing condition, including but not limited to one disc bulging and another disc pressing on a nerve." Am. Compl. ¶ 38. Since the arrest, Stutzman has experienced deterioration in his mobility, chronic back pain that has not responded to pain management, chronic headaches, and lower neck and shoulder pain.

On December 29, 2017, Stutzman filed this case in this Court. On March 9, 2018, Stutzman filed an Amended Complaint, in which he alleges that Defendants violated his rights under the Fourth Amendment to the United States Constitution (Count 1) and under Article 26 of the Maryland Declaration of Rights ("Article 26") (Count 5) to be free from an unreasonable seizure and excessive force. He also asserts state law tort claims of false arrest (Count 2), battery (Count 3), and gross negligence (Count 4). Stutzman seeks compensatory and punitive damages.

## DISCUSSION

In their Motion, Defendants seek dismissal of all counts of the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. First, they argue that Stutzman's claims in Counts 1, 2, and 5 alleging an unreasonable seizure and false arrest fail to state a claim because the facts as stated in the Amended Complaint establish that Manning had probable cause to arrest him. Second, they argue that the probation before judgment disposition of the fleeing-or-eluding charge against Stutzman necessarily established probable cause and thus bars

consideration of the unreasonable seizure and false arrest claims. Third, they argue that Stutzman has failed to allege sufficient facts to support the excessive force, battery, and gross negligence claims in Counts 1, 3, 4, and 5 and that the facts as alleged actually establish that Defendants used reasonable force. Finally, Defendants assert the defenses of federal qualified immunity to the claims in Count 1 and Maryland statutory immunity to the claims in Counts 2–5.

## I.    Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Courts may consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds*, *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's

territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Evid. 201)). The Court therefore takes judicial notice of the true test copy of Stutzman's plea and sentence in the proceedings before the District Court of Maryland for Saint Mary's County, Case Summ., *State v. Stutzman*, Mot. Dismiss Ex. 1, ECF No. 16-2, and the audio recording of those proceedings, Audio Recording, *State v. Stutzman*, Mot. Dismiss Ex. 2, ECF No. 16-3.

## II.     Unreasonable Seizure

In Counts 1, 2, and 5, Stutzman alleges that Defendants arrested him without legal justification, in violation of his federal and state constitutional rights against an unreasonable seizure and his state law right against false arrest. In response, Defendants argue that the facts as alleged in the Complaint establish that Defendants had probable cause to arrest Stutzman for fleeing or eluding a police officer, that the state court's imposition of a probation before judgment disposition in Stutzman's criminal case establishes probable cause as a matter of law, and that Stutzman is judicially estopped from asserting these claims.

Maryland courts construe Article 26 *in para materia* with the Fourth Amendment, such that its comparable provisions are essentially equated to the Fourth Amendment's protections against unreasonable searches and seizures. *Scott v. State*, 782 A.2d 862, 873 & n.2 (Md. 2001). Thus, the resolution of Stutzman's § 1983 claim dictates the outcome of his claim under Article 26. *See Mazuz v. Maryland*, 442 F.3d 217, 231 (4th Cir. 2006), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Accordingly, the Court analyzes the Fourth Amendment and Article 26 claims together.

## A. Constitutional Claims

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a "seizure" of a "person," an arrest of a person must be "reasonable under the circumstances" in order to comply with the Fourth Amendment. *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018).

### 1. Probable Cause

"A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Wesby*, 138 S. Ct. at 586. Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause "deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). The United States Supreme Court has recently stressed that "[p]robable cause 'is not a high bar.'" *Wesby*, 138 S. Ct. at 586 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "To prove an absence of probable cause, [the plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff had violated the relevant statute. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

Here, Stutzman was arrested for the Maryland crime of fleeing or eluding a police officer, which provides that:

> If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official

7

police vehicle, a driver of a vehicle may not attempt to elude the police by . . . [w]illfully failing to stop the driver's vehicle.

Md. Code Ann., Transp. § 21–904(c). The elements of this offense are: "(1) a police officer in uniform or in a marked vehicle (2) gives a 'signal to stop' (3) and a driver willfully (4) attempts to elude the officer." *Scriber v. State*, 86 A.3d 1260, 1267 (Md. 2014). Even considered in the light most favorable to Stutzman, the facts alleged in the Amended Complaint establish that Manning had probable cause to believe that Stutzman had committed this offense. As alleged, Manning pulled behind Stutzman, "activated the vehicle's lights, and attempted to effect a traffic stop." Am. Compl. ¶ 14. Stutzman "continued driving" until he arrived at his home. *Id.* ¶¶ 19-20. Based on these facts alone, a reasonable officer could conclude that Stutzman was willfully failing to stop in response to a police officer's signal to stop.

Although Stutzman asserts that Manning's stop of his vehicle was not lawful because he had broken no traffic laws and Manning was retaliating for the confrontation initiated by Stutzman, the police officer's signal to stop need not be a lawful order for the plaintiff to have violated the statute. *Scriber*, 86 A.3d at 1267. Even though Stutzman may have believed there was no justification for the stop, he was still obligated to stop and address whether the stop was illegal at a later time. *See id.*

Stutzman's claims that he did not "willfully" fail to stop because he feared Manning, he called the MSP for "police backup," and he continued to drive in order "to arrive at a safer location" Am. Compl. ¶ 19, do not alter this analysis. Under Maryland law, in most criminal statutes, the term "willfully" requires only a showing that the act was committed "intentionally, rather than through inadvertence." *Deibler v. State*, 776 A.2d 657, 661-63 (Md. 2001) (surveying prior interpretations of various Maryland criminal statutes). Since Stutzman acknowledged that he saw Manning's signal and nevertheless continued all the way to his own

house, his failure to stop was intentional and not accidental. *See United States v. Davis*, 261 F. Supp. 2d 343, 351 (D. Md. 2003) (finding a defendant guilty of fleeing or eluding a police officer under Maryland law where the defendant acted as "the result of voluntary actions"). Even if "willfully" for purposes of the fleeing-or-eluding statute requires that an individual acted with "bad purpose" "without justifiable excuse," or "evil intent," as it does in other contexts, *see, e.g., United States v. Murdock*, 290 U.S. 389, 394, 398 (1933), a police officer following Stutzman would have had no knowledge of Stutzman's alleged motive. Stutzman has alleged no facts that would support the conclusion that the MSP had radioed Manning to inform him of Stutzman's reasons for not stopping. Rather, an officer in Manning's position could reasonably infer that the failure to stop was intentional and willful, such that it was not "unjustifiable" for Defendants to have concluded that Stutzman was violating the statute. *Brown*, 278 F.3d at 368. Any subjective motivations that Manning may have had do not negate the existence of sufficient facts that objectively establish probable cause. *See United States v. Han*, 74 F.3d 537, 541 (4th Cir. 1996). Because the Amended Complaint itself establishes probable cause to conclude that Stutzman committed the offense of fleeing or eluding a police officer, the claims in Counts 1, 2, and 5 cannot succeed.

### 2.     Probation Before Judgment

Even if the allegations in the Amended Complaint were insufficient to establish probable cause, Defendants argue that Stutzman's claim is barred because probable cause was necessarily established when Stutzman was charged in the District Court of Maryland for St. Mary's County with the fleeing-or-eluding offense, and that court entered a probation before judgment ("PBJ") disposition against him. Stutzman argues that his PBJ disposition is not controlling on the issue of probable cause because such a disposition does not qualify as a conviction.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 claim is barred when the success of that claim would "necessarily imply that the plaintiff's criminal conviction was wrongful" or invalid, unless the conviction or sentence had been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal," or called into question by a writ of habeas corpus granted by a federal court. *Id.* at 486 n.6, 486–87. Under this principle, if Stutzman were convicted of fleeing or eluding a police officer, his § 1983 claim alleging that the traffic stop violated the Fourth Amendment would be barred because a finding that the stop was unlawful would require its suppression and thus invalidate the conviction. *See Ballenger v. Owens*, 352 F.3d 842, 847 (4th Cir. 2003).

Although the United States Court of Appeals for the Fourth Circuit has not addressed whether a Maryland PBJ disposition qualifies as a conviction for purposes of *Heck*, the United States Court of Appeals for the Fifth Circuit has held that a deferred adjudication under Texas law is a "conviction for the purposes of" *Heck*. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007). Under Texas law, when a defendant receives a deferred adjudication, there is no finding of guilt and no sentence. *See DeLeon*, 488 F.3d at 653, 656. Nevertheless, the court held that a deferred adjudication is "akin to [a] judgment[] of conviction" because it is "a final judicial act" for which there is a judicial finding that the evidence substantiates the defendant's guilt and an order imposing conditions of probation that may include a fine and incarceration. *Id.* at 655–56. Thus, a deferred adjudication order is a conviction for purposes of *Heck*'s bar on § 1983 claims that would undermine the validity of a conviction. *DeLeon*, 488 F.3d at 656.

Although a PBJ disposition under Maryland law likewise does not result in a formal conviction or judgment, *see Powell v. Md. Aviation Admin.*, 647 A.2d 437, 441 (Md. 1994), it is,

like a Texas deferred adjudication, a final judicial act with an order imposing conditions of probation. More importantly, a PBJ, by statute, necessarily comes after a finding of guilt. *See* Md. Code Ann., Crim. Proc. § 6–220(b)(1) (West 2011) (stating that "[w]hen a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may state the entering of judgment, defer further proceedings, and place the defendant on probation"); *Howard Cty. Dep't of Soc. Servs. v. Linda J.*, 869 A.2d 404, 410 (Md. Ct. Spec. App. 2005) ("The probation before judgment statute plainly requires that a determination of guilt must precede the granting of probation before judgment."). Because such a finding of guilt would necessarily be undermined by a successful challenge to the underlying arrest, the Court concludes, based on the reasoning of *DeLeon*, that a Maryland PBJ disposition is the equivalent of a conviction for purposes of *Heck*. *See DeLeon*, 488 F.3d at 654.

The facts of this case illustrate the applicability of *Heck* to a PBJ. Here, Stutzman was charged with fleeing or eluding the police on January 7, 2016 in connection with this traffic stop. Case Summ. at 1, *State v. Stutzman*. In assenting to proceed with an agreed-upon statement of facts, Stutzman acknowledged that he was waiving his right to challenge the evidence in the case and his right to appeal. Audio Recording, *State v. Stutzman*. Upon consideration of the facts, the state court found him guilty of the offense, imposed a 180-day suspended sentence, and ordered him to pay a fine of $500 as well as court costs. The court then granted probation before judgment and imposed two years of probation with the conditions that he attend a substance abuse program if needed and a driver improvement program, with the understanding that the judgment would not enter if he satisfactorily completed probation. *Id.* As a condition of the PBJ, Stutzman waived his right to appeal. *Id.*

11

Under these circumstances, a finding by this Court that Defendants lacked probable cause to arrest Stutzman would necessarily invalidate the original guilty finding upon which the PBJ was premised, because if the arrest were invalid, there would have been no other lawful basis for Defendants to have detained and charged him with this offense. *See Heck*, 512 U.S. at 487 n.7 (noting that in a § 1983 claim seeking damages from an allegedly unconstitutional search, "doctrines like independent source and inevitable discovery and especially harmless error" could prevent a successful action from "*necessarily* imply[ing] that the . . . conviction was unlawful"). Where Stutzman waived his right to challenge the evidence and to appeal, and thus had effectively received a final disposition, permitting him to contest the underlying arrest simply because the disposition was a PBJ would run contrary to the rationale of *Heck*. Accordingly, under *Heck*, Stutzman's constitutional claims challenging his arrest are barred. *See id.*

For similar reasons, Stutzman's unreasonable seizure claim based on the Maryland Constitution is also barred. Under Maryland law, a conviction for a crime "conclusively establishes the existence of probable cause" to support the criminal offense, even if the conviction is later reversed, unless it was obtained fraudulently. *Zablonsky v. Perkins*, 187 A.2d 314, 316–17 (Md. 1963). At a minimum, a PBJ must be construed as the equivalent of a conviction that is later reversed by the same court after the conditions of release have been fulfilled. *See* Md. Code Ann., Crim. Proc. § 6–220(b)(1). Because the PBJ disposition against Stutzman on the charge of fleeing or eluding an officer necessarily demonstrates that Defendants had probable cause to arrest him, his unreasonable seizure claim under the Maryland Constitution is also barred. The Court therefore need not address Defendants' judicial estoppel argument.

For these reasons, Stutzman has failed to state a claim for an unreasonable seizure under the Fourth Amendment and Article 26. Defendants' Motion to Dismiss is granted as to these claims.

**B.     False Arrest**

For similar reasons, Stutzman has failed to state a claim for false arrest. The elements of a false arrest claim are (1) the deprivation of the liberty of another; (2) without consent; and (3) without legal justification. *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). Whether legal justification exists depends on whether the officer acted with legal authority to arrest. *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995). In the case of a warrantless arrest, the legal justification required depends on whether the crime of arrest is a felony or a misdemeanor. "[A] police officer has legal justification to make a warrantless arrest where he has probable cause to believe that a felony has been committed, and that the arrestee perpetrated the offense." *Ashton v. Brown*, 660 A.2d 447, 472 (Md. 1995). In contrast, a warrantless arrest for a misdemeanor "is legally justified only to the extent that [the] misdemeanor was actually committed in a police officer's view or presence." *Id.* In Maryland, violations of motor vehicle laws are misdemeanors unless the statute states otherwise or a civil penalty is assessed as punishment. Md. Code Ann., Transp. § 27–101. Since the provision prohibiting fleeing or eluding police does not state that violation of the statute constitutes a felony, it is a misdemeanor. *See* Md. Code Ann., Transp. § 21–904(c). As discussed above, the facts alleged in the Amended Complaint establish that Manning signaled for Stutzman to stop his vehicle, that Stutzman failed to stop his vehicle while in Manning's "view or presence," *Ashton*, 660 A.2d at 472, and that Manning was legally justified in arresting Stutzman. *See supra* part II.A.1. Furthermore, as discussed above, because the PBJ disposition definitively establishes that Defendants had

lawfully arrested Stutzman, he has no viable false arrest claim. *See supra* part II.A.2; *Zablonsky*, 187 A.2d at 316–17. Accordingly, Stutzman has failed to state a claim for false arrest. Defendants' Motion to Dismiss is granted as to that claim.

## III.    Excessive Force

Stutzman also alleges claims of excessive force under the Fourth Amendment (Count 1) and Article 26 (Count 5), as well as claims of Maryland common law battery (Count 3) and gross negligence (Count 4), based on Defendants' alleged use of unnecessary and unreasonable force in handcuffing, moving, and transporting him during the arrest. Defendants argue that their use of force was not excessive, that they cannot be found liable for battery because they were effecting a lawful arrest, and that Stutzman has not alleged facts that could support a claim of gross negligence.

### A.    Constitutional Claims

Because, under Maryland law, Article 26 of the Maryland Declaration of Rights is construed *in pari materia* with the Fourth Amendment, *Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 2000), the Court considers the federal and state constitutional claims together. A claim of excessive force used during an arrest invokes the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To assess whether the force used was reasonable and not excessive, a court must balance the governmental interests and "the nature and quality of the intrusion on the individual's Fourth Amendment interests." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The test is an objective one: whether the officer's actions are objectively reasonable under the facts and circumstances, recognizing that officers often must make "split-second judgments." *Id.* at 397. Relevant considerations include the seriousness of the crime, whether the individual poses an immediate threat to the safety of others, and whether

14

the individual is actively resisting or attempting to evade arrest. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" will rise to a Fourth Amendment violation. *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Notably, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396.

In the context of an arrest, the Fourth Circuit "has never held that using handcuffs is per se reasonable." *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 180 (4th Cir. 2018). A police officer can violate a person's Fourth Amendment rights by using excessive force during handcuffing. *See id.* at 185. In particular, courts have held that handcuffing in an excessively tight manner so as to cause injury can constitute excessive force. *See, e.g., Getz v. Swoap*, 833 F.3d 646, 654 (6th Cir. 2016); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). More specifically, courts have also held that handcuffing an arrestee with his arms behind his back can constitute a constitutional violation if such handcuffing causes pain and injury as a result of a known medical condition. *See, e.g., Howard v. Dickerson*, 34 F.3d 978, 979, 981 (10th Cir. 1994); *Walton v. City of Southfield*, 995 F.2d 1331, 1341-42 (6th Cir. 1993).

Viewing the allegations in the Amended Complaint in the light most favorable to Stutzman, the Court finds that he has stated a plausible claim of excessive force. Here, Stutzman had a physically disabling spinal condition and visibly walked in a manner that revealed his disability, so he requested to be handcuffed with his hands in front of his body because he was physically unable to put his arms behind his back. Nevertheless, Krenik forced Stutzman's hands behind his back and handcuffed him as Stutzman screamed in pain. Although Stutzman stated that he could not physically sit in the front seat of a police cruiser when handcuffed in that

manner, Krenik grabbed his leg and attempted to force Stutzman into the front seat of the vehicle, even though another cruiser was available that would have allowed him to sit or lie down in the back seat. Stutzman was in such severe pain that he screamed and began to cry. When Stutzman was finally placed in the back seat of a cruiser, he remained in excruciating pain during the transport to the station, but Krenik refused to allow Stutzman to sit more comfortably or to change the positioning of the handcuffs. As a result of the handcuffing and transport, Stutzman's mobility and chronic pain have worsened. These facts are sufficient to state an excessive force claim. *See Walton*, 995 F.2d at 1342.

Consideration of the *Graham* factors bolsters this conclusion. The offense for which Stutzman was arrested was a misdemeanor, fleeing or eluding a police officer, which is punishable by "imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both" for a first offense. Md. Code Ann., Transp. § 21–904(c). Although Stutzman plainly violated this statute by failing to stop his car for several miles, he did not create a public danger by driving at a reckless speed, leading Manning on a high-speed chase, or taking evasive maneuvers. At the time of the arrest, Stutzman did not pose a risk or threat to the safety of others, since he was stopped at his home and was surrounded by state and county police officers. Furthermore, Stutzman was not actively attempting to resist the police officers or evade arrest. Indeed, during the proceedings in state court, Manning acknowledged that Stutzman was cooperative and did not resist arrest. Audio Recording, *State v. Stutzman*. Under these conditions, Stutzman could plausibly assert that under the totality of circumstances, Krenik's use of force, particularly his decision to handcuff Stutzman's hands behind his back despite his physical condition, was not "objectively reasonable." *See Graham*, 490 U.S. at 397. Accordingly, Stutzman has stated a claim of excessive force under the Fourth Amendment and Article 26.

### B. Battery

In Count 3, Stutzman asserts a claim of battery against Krenik based on the same facts supporting his excessive force claims. Under Maryland law, battery is the "unlawful application of force to the person of another." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991). An officer is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest. *See Ashton v. Brown*, 660 A.2d 447, 471 n.24 (Md. 1995); *Busch v. State*, 426 A.2d 954, 958 (Md. 1981); *Hines v. French*, 852 A.2d 1047, 1055-56 (Md. Ct. Spec. App. 2004) (holding that officers were entitled to judgment as a matter of law on claims of battery, false imprisonment, and false arrest where they had legal justification to arrest the plaintiff). However, if during a valid arrest "an officer uses excessive force, or force greater than is reasonably necessary under the circumstances, the officer may be liable" for battery. *French v. Hines*, 957 A.2d 1000, 1037 (Md. Ct. Spec. App. 2008). To the extent that Stutzman has stated a claim of excessive force under the Fourth Amendment, he has stated a claim for battery against Krenik as well.

### C. Gross Negligence

In Count 4, Stutzman asserts a claim against Krenik for gross negligence based on the way in which he handcuffed, moved, and transported Stutzman during and after the arrest. Under Maryland law, gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)). It is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre*, 935 A.2d at 717 (*quoting Liscombe v. Potomac*

*Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). An individual acts with gross negligence when that person "inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*

In the context of gross negligence claims alleging excessive force, the Court of Appeals of Maryland has held that the principle of objective reasonableness as articulated in *Graham* "controls." *Richardson v. McGriff*, 762 A.2 48, 56 (Md. 2000); *see also Torbit v. Baltimore City Police Dep't*, 153 A.3d 847, 858 (Md. Ct. Spec. App. 2017). Therefore, since Stutzman has sufficiently alleged that Krenik's conduct was objectively unreasonable and amounted to excessive force in violation of the Fourth Amendment, he has stated a claim for gross negligence against Krenik. The Motion to Dismiss will be denied as to the gross negligence claim.

## IV. Immunity

Defendants further argue that regardless of whether Stutzman has stated valid claims, they are entitled to the defenses of qualified immunity as to the federal constitutional claims and Maryland statutory immunity for the claims under Maryland law. Because the Court will dismiss the claims relating to whether Stutzman's arrest constituted an unreasonable seizure or false arrest, the Court addresses immunity only as it relates to the excessive force and related claims.

### A. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Henry v. Purnell*, 501 F.3d 374, 376–77 (4th Cir. 2007). When qualified immunity is asserted, the court must consider two questions: (1) whether the

facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right, and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Henry*, 501 F.3d at 377. For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377. Courts may address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As the Court has already found that Stutzman has stated a claim under the Fourth Amendment for excessive force during his arrest, the Court considers whether Stutzman's right to be free from such force was "clearly established" at the time of the incident. *See Harlow*, 457 U.S. at 818.

In determining if a right is "clearly established," the Court considers whether "the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right" and was thus "on notice" that the conduct violated established law. *E.W.*, 884 F.3d at 185. Even if no court has found that the specific conduct in question violated an individual's rights, "if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question," the right may be clearly established. *Id.* However, "courts must not 'define clearly established law at a high level of generality.'" *Id.* (citations omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)); *see White v. Pauly*, 117 S. Ct. 548, 552 (2017). The Court must "identify a case where an officer acting under similar circumstances" was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552; *Safar v. Tingle*, 859 F.3d 241, 246 (4th Cir. 2017). Although the facts of such a case need not be "identical" to the present facts, *Safar*, 859 F.3d at 248, it should be "obvious" that the case applies to the facts, *White*, 137 S. Ct. at 552.

In assessing this question, the court "first examines 'cases of controlling authority in [this] jurisdiction,'" here, the Supreme Court, Fourth Circuit, and the Court of Appeals of Maryland. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)). If that authority is not dispositive, the Court may still consider "'a consensus of cases of persuasive authority' from other jurisdictions" as a basis to find that conduct was barred by clearly established law. *Booker*, 855 F.3d at 539 (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). When considering whether there is such a "consensus," a court considers not only the broad holdings of those cases but also the specific requirements adopted by each court. *See Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004).

As of January 7, 2016, the day that Stutzman was arrested, neither the Supreme Court nor the Fourth Circuit had held that handcuffing an arrestee's hands behind his back could violate the Fourth Amendment when the arrestee had a physical disability or condition that precluded such handcuffing. Rather, the Fourth Circuit had previously stated, in 2002, "that the use of handcuffs would 'rarely' be considered excessive force when the officer has probable cause for the underlying arrest." *E.W.*, 884 F.3d at 186 (quoting *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)). The Fourth Amendment's general bar on excessive force, and the clearly established requirement, under *Graham*, that "as a general matter, an officer must carefully measure the force used to respond to the particulars of a case," is not specific enough to establish clearly that Krenik's conduct was unlawful. *See E.W.*, 884 F.3d at 186 (holding that such general principles were insufficient to support a conclusion that handcuffing a school child violated clearly established law as of 2015). Although the Fourth Circuit recently held that handcuffing a school child could violate the Fourth Amendment, that holding does constitute

clearly established law applicable here because it addresses a different factual scenario and was issued after the actions taken against Stutzman. *See id.* at 187.

However, a consensus of persuasive authority from other jurisdictions had clearly established, prior to 2016, that when a police officer had reason to know of an arrestee's injury, the officer's refusal to handcuff an individual in the front, or to otherwise refrain from aggravating the injury during the arrest process, can violate the arrestee's constitutional rights. The United States Court of Appeals for the Sixth Circuit has held that where an arrestee asked that she not be handcuffed with her hands behind her back because she had a sore shoulder and had just come from treatment for that condition, "[a]n excessive use of force claim could be premised on . . . handcuffing . . . if [the officer] knew that [the arrestee] had an injured arm and if he believed that she posed no threat to him." *Walton*, 995 F.2d at 1342. The United States Court of Appeals for the Tenth Circuit has held that where the plaintiff was wearing a neck brace, told the officer that she had recently undergone surgery, and asked for handcuffing in front to prevent injury, she had stated a constitutional claim for deliberate indifference to her medical needs. *Howard*, 34 F.3d at 979, 981; *see also Wilson v. Meeks*, 52 F.3d 1547, 1556 (10th Cir. 1995) (holding that *Howard* applies when the facts suggest that the police officers "could . . . be expected to know their actions would exacerbate a medical problem" and when the arrestee could not "have posed a threat to human life"). Similarly, the United States Court of Appeals for the Eighth Circuit has held that an officer's grabbing of the wrist of an individual with his arm in a sling and pushing him into a wall could support a constitutional claim for excessive force. *Guite v. Wright*, 147 F.3d 747, 749–50 (8th Cir. 1998); *see also Littrell v. Franklin*, 388 F.3d 578, 581, 585 (8th Cir. 2004) (stating that where an arrestee reported extreme pain in her arm, which had been broken by the officer during the arrest, the court needed to determine whether the

officer knew she was injured, yet continued to handcuff her and force her into the car, to assess whether there was a violation of clearly established law).

Defendants argue that there is no such consensus because in *Hunt v. Massi*, 773 F.3d 361 (1st Cir. 2014), the United States Court of Appeals for the First Circuit granted qualified immunity to an officer who had refused an uncooperative arrestee's request for front handcuffing, even though he had a scar on his stomach and said he had recently had surgery, because the scar was not the type of visible injury that would cause a reasonable officer to understand that handcuffing in the back would constitute excessive force. *Id.* at 370. In *Hunt*, however, the court relied on the observation that "[w]e are aware of no case . . . where a court held that ignoring an uncooperative suspect's claim of *invisible* injury (such that handcuffing could be harmful) made during the course of handcuffing constituted excessive force." *Id.* (quoting *Beckles v. City of New York*, 492 F. App'x 181, 183 (2d Cir. 2012)). The United States Court of Appeals for the Second Circuit, in an unpublished opinion, observed that "While there is a general consensus among courts to have addressed the issue that otherwise reasonable force used in handcuffing a suspect may be unreasonable when used against a suspect whom the officer knows to be injured, these cases involving handcuffing uniformly concern suspects who either have visible injuries or are cooperating in their arrests." *Beckles v. City of New York*, 492 F. App'x 181, 183 (2d Cir. 2012). Thus, while the First and Second Circuits may diverge from other circuits in that they do not allow an excessive force claim based on an uncooperative suspect's claim that an invisible injury requires handcuffing in the front, they do not dispute the "general consensus" that when a police officer has reason to know of an arrestee's injury from a claim by a cooperative suspect, or by any suspect with a visible injury, the officer's refusal to

handcuff the individual in the front so as to avoid a resulting further injury would violate the arrestee's constitutional rights.

Viewing the allegations in the Amended Complaint in the light most favorable to Stutzman, the Court concludes that the facts sufficiently allege a violation of clearly established law. Stutzman has alleged that he had a debilitating injury that would be aggravated by handcuffing in the back. Krenik had reason to know about this condition because Stutzman told Krenik at least three times that he was injured and told him that handcuffing him behind his back would further injure him. Krenik was also put on notice when Stutzman screamed out in pain, and exhibited obvious and severe pain, throughout the encounter. Unlike in *Hunt*, Stutzman was cooperative, did not resist arrest, and did not pose a threat to the safety of the officers or any others at the time of the arrest. Finally, even if Stutzman had not been cooperative, viewed in the light most favorable to Stutzman, the Amended Complaint has alleged a visible injury by stating that Stutzman walked and moved "in a way manifesting genuine physical disability." Am. Compl. ¶ 29. Because Stutzman has alleged facts that state a claim of a violation of clearly established law, the Court will not dismiss the claim at this stage based on the defense of qualified immunity.

### B. Maryland Statutory Immunity

Defendants argue that two statutes, Md. Code Ann., State Gov't § 12–105 and Md. Code Ann., Cts. & Jud. Proc. § 5–522, immunize them from suit against Stutzman's state constitutional claims and state tort claims. Because the Court has found that Stutzman has failed to state a claim for an unreasonable seizure under Article 26 or for common law false arrest, it will address the statutory immunity defense only as it relates to the state constitutional claim for excessive force and the state tort claims for battery and gross negligence.

23

Section 12–205 provides that "[s]tate personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article." Md. Code Ann., State Gov't § 12–205 (West 2015). Section 5–522, in turn, provides that state personnel are immune from tortious liability for acts performed within the scope of their duties without malice or gross negligence:

> State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . .

Md. Code Ann., Cts. & Jud. Proc. § 5–522(b) (West 2011). This immunity applies to constitutional torts and intentional torts. *Lee v. Cline*, 863 A.2d 297, 310 (Md. 2004). Because Defendants were acting as Maryland state troopers during the incident, they qualify as state personnel and thus fall within the ambit of this statutory immunity. Notably, neither this statute nor common law provides immunity to Maryland state personnel for claims of gross negligence. *Cooper v. Rodriguez*, 118 A.3d 829, 856, 860 (Md. 2015). Therefore, to the extent that Stutzman has stated a claim for gross negligence, Defendants are not immune from liability under that claim.

Defendants assert two reasons that the state law claims should be dismissed based on their state immunity defense. First, they argue that Stutzman has not, as required by Maryland law, alleged malice and gross negligence with some specificity. *See* Mot. Dismiss at 28, ECF No. 16 (quoting *Elliott v. Kupferman*, 473 A.2d 960, 969 (Md. Ct. Spec. App. 1984)). Second, Defendants argue that Stutzman has not alleged facts that, if true, would support a finding of malice or gross negligence.

As to the pleading standard, procedural matters relating to pleading are governed by the Federal Rules of Civil Procedure, not state law. *Swift & Co. v. Young*, 107 F.2d 170, 172 (4th

Cir. 1939). Federal Rule of Civil Procedure 9(b) allows plaintiffs to allege malice generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Although plaintiffs must state a plausible claim for relief, Rule 9(b) provides that there is no such heightened pleading standard for malice in federal court. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).

As for the sufficiency of the factual allegations, the Amended Complaint alleges sufficient facts to support findings of gross negligence and malice. As discussed above, because Stutzman has stated a claim that Krenik's use of force was unreasonable and violated the Fourth Amendment, he has alleged facts sufficient to state a claim for gross negligence. *See supra* part III.C.

Under Maryland law, malice "refers 'to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee*, 863 A.2d at 311 (quoting *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999)). In *Lee*, the Court of Appeals of Maryland held that an inference that a police officer acted with malice during a traffic stop of a luxury car driven by an African American man was warranted where the stop was longer than necessary, the officer requested a canine search of the plaintiff's car without justification, and the officer yelled at the plaintiff, called him an uncooperative "suspect," and asserted that he could search the car without permission. *Id.* at 312. Here, Stutzman described a specific episode that supports an inference that Defendants acted with malice. He stated that immediately before Manning followed him and signaled for him to stop, Stutzman had observed Manning driving his police cruiser recklessly and had taken it upon himself to flash his lights at Manning, effectively pull the police cruiser over, and confront Manning about his driving. He further asserted that Manning "acted dismissively" and drove off "aggressively." Am. Compl. ¶ 13. In light of this

highly unusual encounter, Stutzman's allegation that the traffic stop, arrest, and excessive force were retaliatory is plausible. Moreover, Stutzman alleged additional facts that support this conclusion, including that Defendants were "visibly and audibly annoyed and angry" during the encounter, *id.* ¶ 22, and that Krenik yelled at him, used a sarcastic and intimidating tone during booking, deliberately delayed the booking process at the station, and ordered a frivolous drug test. Taken together, these facts are more than sufficient to allege malice. Therefore, at this stage of the proceedings, Defendants are not entitled to statutory immunity from Stutzman's Maryland law claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 16, is GRANTED IN PART and DENIED IN PART. The Motion is granted as to the unreasonable seizure claims in Count 1 and Count 5 and the false arrest claim in Count 2. Those claims are DISMISSED WITH PREJUDICE. The Motion is denied as to the excessive force claims in Count 1 and Count 5, the battery claim in Count 3, and the gross negligence claim in Count 4. Since all claims against Manning have been dismissed, Manning is DISMISSED as a Defendant. A separate Order shall issue.


Date: October 10, 2018

THEODORE D. CHUANG
United States District Judge

26